## (December 23, 1968)

■ CITY SCHOOL DISTRICT OF THE CITY OF WHITE PLAINS, by the Board of Education of Said City School District, Appellant, v. MABEL T. SMITH et al., Respondents.

MEMORANDUM: This appeal is before us after Special Term confirmed the thorough report of three Commissioners of Appraisal involving a land and improvements parcel, condemned for school purposes. The experts for the contending parties, the Commissioners and the court at Special Term have all agreed

that the value of the building and improvements is approximately $187,000. The point of difference between the experts has been the valuation of the land. There was a full trial with adequate cross-examination on this question; and the Commissioners not only examined the subject premises, which they were required to do, but also personally inspected the parcels submitted by the experts as comparable sales.

Within this framework, the Commissioners arrived at a total valuation for land and building of $345,000, roughly a sum which is the average of the high and low figures of the two experts. This valuation, subsequently confirmed by the court at Special Term, was arrived at in accord with established procedure and we find it to be a proper and a fair amount. It is not excessive. We may not disturb the valuation found under the circumstances of this case (*Matter of Huie*, 2 N Y 2d 168).

Finally, we find no improvident exercise of discretion in Special Term's award of a statutory 5% additional allowance (Condemnation Law, § 16).

Benjamin, J. (dissenting). In my opinion, the award in this case is grossly excessive.

The issues have been thoroughly and competently tried by both sides; and the record is adequate to enable this court to determine a fair award, different though it may be from that made by the Commissioners and confirmed by Special Term.

I am in full accord with the Commissioners' findings that the building in question is not a specialty; that the highest and best use of the property, including the land, is the use for which it was employed at the time of the taking; that the vacant land, in front and in back of the property, aggregating 36,000 square feet, should be considered as auxiliary to the building itself, since the front was required for loading purposes and the rear for off-street parking for employees; and that, under such circumstances, the proper way to value the property is by the capitalization method, not by the summation method. On this last point, it is plain that the summation method of appraisal, which determines value by adding the estimated fair value of the land to the depreciated reconstruction cost of the buildings, is inappropriate with respect to a non-specialty, income-producing property like that at bar. For the purpose of total illumination, comparable sales may likewise be employed, but in the final analysis the award in this case must stand or fall upon the basis of a properly-applied formula of capitalization of net income.

A close scrutiny of the Commissioners' report discloses that, while professing adherence to the capitalization method, they paid only lip service to it and actually based their award of $345,000 (rounded out from their valuation of $343,000 [$186,000 for the building; and $157,000 for the land, at $2.70 per square foot]) on (a) testimony by the experts for both sides that the building was worth about $187,000 by the summation method and (b) testimony by defendants' expert that arbitrarily fixed the value of all the land at $4 a square foot, and testimony by plaintiff's expert that arbitrarily fixed the value of all the land at $2.05 a square foot. This departure from the capitalization method has resulted in an actual rate of capitalization so inordinately low as to be totally unrealistic and, therefore, untenable.

The record discloses the following:

The actual gross rental income from the entire property—land and building—was $31,000 at the time of the taking. The expenses, estimated in testimony of the experts and the owner, and accepted by the Commissioners, totalled about $8,000; about $7,300 of that sum was for taxes, about $400 was for repairs and about $350 was for insurance; no allowance was made for management expense, vacancies or occasional major exterior repairs. If we were to deduct $8,000

from the actual gross income, the actual net income would be $23,000; if we were to increase the expenses by attributing a fair amount to the omitted factors of management expense, vacancies and major repairs, the actual net income would probably be closer to $20,000 than $23,000.

Disregarding these facts, the Commissioners found that the fair rental value of the entire parcel was $36,000; they accepted the deflated $8,000 estimate for expenses as accurate; and they thus found the net rental value to be $28,000. In my opinion, this finding was unwarranted on the law and the facts. As Breitel, J., pointed out in *Matter of City of New York* (*First Elephant Estates-La Hermosa Church*) (17 A D 2d 317, 322): "One looks to the actual rents as a reliable index to future rents (*People ex rel. Gale* v. *Tax Comm.*, 17 A D 2d 225, *supra*, and cases cited)." Apart from that, the finding of a fair rental value of $36,000 has very dubious support in the record. The proof shows that this building is a run-of-the-mill industrial building, almost 40 years old, age-weary and in need of substantial repairs and refurbishment; for such a building, the rent being paid at the time of the taking was actually the fair rental income.

Also erroneous, in my view, was the procedure used in capitalizing the net income. While there was mention of an overall capitalization rate of $7\frac{1}{2}\%$ by the claimant's expert, the record clearly shows that he, as well as the School District's expert and the Commissioners, actually used split capitalization rates. All of them fixed arbitrary values for the land, including the land under the building, and then applied a 6% capitalization rate to those arbitrary values; the claimant's expert then applied a $7\frac{1}{2}\%$ capitalization rate to the building, the School District's expert applied a 10% rate to it, and the Commissioners applied a 10% rate. That procedure resulted in a total valuation of $453,000 by claimant's expert, based upon his claim of a total net rental value of $31,600, which represents a return of about 7% on the land and building; this return included his estimate of about 3% per year for depreciation, so the true net return, on his figures, would be only 4%; obviously, it would be absurd to expect any knowledgeable real estate investor to buy this old, shabby property at a price that would produce a return of only 4% when first mortgages pay over 7% and tax exempt bonds can produce almost 5%.

A similar picture emerges when we analyze the Commissioners' valuation, which was $343,000, based upon their finding of a total net rental value of $28,000; on those figures, the return would be about 8% on the land and building; once again, this return included about 3% per year for depreciation, so the true net return would be only about 5%; and once again it would be absurd to expect a knowledgeable buyer to pay a price for this property that would yield him only a 5% return.

Another fact pointing up the incongruity of this award is that there has been no reasonable allowance made for vacancies, major repairs or the other risks incident to the ownership and operation of realty; if such allowance were made, the true return would be even less than the 5% resulting from the Commissioners' award. If we were to use $23,000 as the true net income (and I consider even this figure to be too high), the award of $345,000 would work out to a capitalization rate of about $6\frac{1}{2}\%$; and, when we deduct 3% depreciation from that percentage, the result is a true return of only $3\frac{1}{2}\%$, which plainly is a bizarre result in the applicable investment market.

The result in this case points up the inaptness of split capitalizations as a valuation method. It is inappropriate and inaccurate because it is not based on the realities of the real estate market. In common practice, a man buying an improved investment property has not the slightest interest in the separate values of the building and the land under it, since he cannot use the land except

in conjunction with the building; hence, he is concerned only with what he will earn on his *entire* investment, and what he will pay for the property is related directly to the *overall* capitalization rate. Supporting this view is the comment by BREITEL, J., in *Matter of City of New York* (*First Elephant Estates-La Hermosa Church*) (17 A D 2d 317, *supra*), where he said this (p. 322): "Claimant would try to raise the value by utilizing split capitalization rates for land and building (6% for the land and 11% for the building), and claiming a much greater value for the land. * * * there was no evidence to justify considering this land more valuable in proportion to the building on it than the neighboring lands. Actually, claimant's expert testified to using an over-all rate of 9.12%. One city expert testified to using an over-all rate of 10.7%. Thus, using the over-all rate of 10% which approximates the results in the other pracels in this condemnation would seem appropriate."

As I have previously indicated, there is another flaw in the capitalization procedure used by the Commissioners. When carefully analyzed, the experts' testimony valuing the building itself at $187,000 (School District's expert) or $188,000 (claimant's expert) was based on the summation method (reproduction cost, less depreciation), rather than a true capitalization of income. This valuation was adopted by the Commissioners despite the conceded facts that the building was not a specialty and that the summation method of valuation was inapplicable.

The product of the above-described flaws in the capitalization procedure was the distorted and excessive valuation of the subject property by the Commissioners. If we were to assume, *arguendo,* that the record supports the Commissioners' finding that the net income was $28,000, a capitalization of that income at an over-all rate of 10% would produce a valuation of $280,000 for the entire property. This valuation, in my view, is over-liberal and certainly the most that can be supported on this record, since (a) it was based on an estimated net rental value which is $5,000 higher than the actual net income of the property, (b) the expenses were understated and (c) it did not take into reasonable account the factor of about 3% for depreciation, which an experienced buyer would have deducted from the income when computing the net income to be used as a basis for determining market value by the capitalization method.

As I have earlier indicated, comparables may be usable to illuminate the picture or confirm the findings of value by the capitalization method. Here, however, I find no comparables that were truly such; those that were used by the experts shed no light on the value of the subject property and certainly add no support to the award made herein. Rather do they indicate its excessiveness.

In my opinion, any award in excess of $280,000 is insupportable, since the true value of this property is far less than that sum; hence, I find the award of $345,000 shockingly excessive.

Also clear is the fact that the additional allowance of 5% for attorneys' fees is an unwarranted penalty. The claimed value of $453,000, contained in the report of the claimant's appraiser, was such a flight from reality as to foreclose any attempt at fair adjustment.

As we now have the power to modify the Commissioners' award (*Matter of Ford* [*Siska*], 24 A D 2d 14, affd. 22 N Y 2d 834), I vote to reduce the award to $280,000 and to delete the 5% allowance for counsel fees.

Beldock, P. J., Christ, Rabin and Hopkins, JJ., concur in Memorandum; Benjamin, J., dissents and votes to modify the order so as to reduce the award and to delete the additional allowance, with an opinion.

Order of the Supreme Court, Westchester County, dated October 30, 1967, which *inter alia* (1) confirmed a report of Commissioners of Appraisal, as corrected, fixing a condemnation award at $345,000, and (2) granted respondents an additional allowance of 5% upon the award. Order affirmed, with costs.